S10A2028. HOWARD v. THE STATE.
S11A0026. ROSS v. THE STATE.
(707 SE2d 80)

CARLEY, Presiding Justice.

Appellants Jarmmal Howard and Joe Ross were tried jointly before a jury. Ross was found guilty of the malice murder of Quatavius Bell, felony murder during the commission of possession of a firearm by a convicted felon, and a separate count charging that underlying offense. Both Appellants were found guilty of felony murder during the commission of an aggravated assault against Bell, four counts of aggravated assault against four other individuals, and possession of a firearm during the commission of a felony. The felony murder verdicts against Ross were vacated by operation of law, and the count of aggravated assault involving Bell was merged into the remaining murder verdicts. The trial court entered judgments of conviction on those guilty verdicts which were neither vacated nor merged, and sentenced both Appellants to life imprisonment for murder, consecutive 20-year terms for the four remaining aggravated assault counts, and a consecutive five-year term for firearm possession during the commission of a felony. Ross was also sentenced to a consecutive five-year term for firearm possession by a convicted felon. Thereafter, separate motions for new trial were denied and separate notices of appeal were filed.[*] The two appeals are consolidated for disposition in this single opinion.

1. Construed most strongly in support of the verdicts, the evidence, including the testimony of several eyewitnesses, shows

---

[*] The crimes occurred on November 7, 2004, and the grand jury returned an indictment on February 4, 2005. The jury found Appellants guilty on March 27, 2008 and, on the following day, the trial court entered the judgments of conviction and sentences. Howard's motion for new trial was filed on April 10, 2008, amended on October 8, 2009, and denied on April 29, 2010. Ross' motion for new trial was filed on April 25, 2008, amended on December 29, 2008, and denied on May 17, 2010. Both notices of appeal were filed on May 26, 2010. Howard's appeal was docketed in this Court for the September 2010 term as Case Number S10A2028, and Ross' appeal was docketed for the January 2011 term as Case Number S11A0026. Both cases were orally argued on January 24, 2011.

that Carlos White, who was with a large group of friends, pulled a gun on Howard at an apartment complex. After Howard left, he was angry and told his friends that he would return and start shooting. Howard called his mother and was picked up by her and Ross, who is his stepfather. When White and his friends later drove into the apartment complex, Howard began firing an AK-47 and Ross began firing a pistol in their direction while many people were in the parking lot, including Bell and four of his friends. Bell was fatally wounded by a bullet which matched shell casings that were found at the scene and came from a Bryco or Lorson .380 caliber pistol.

With respect to the convictions for aggravated assault of Bell's friends Kenneth Sanders, Tavarus Simon, and Demarcus Smith, Howard argues that the evidence shows only that these alleged victims heard gunshots and ran, that Sanders testified that he was not afraid that he would be shot, and that Smith testified that he witnessed the shooting but did not know if the shots were coming in his direction. "The state of mind of the victim of an assault is a question of fact, which may be established by circumstantial evidence. [Cit.]" *Lewis v. State*, 215 Ga. App. 161, 163 (2) (450 SE2d 448) (1994).

> "(P)roof that the victim has been placed in apprehension of immediately receiving a violent injury need not necessarily be solely by reason of the victim's testimony of his mental state but may be inferred from the conduct of the victim such as when he retreats to secure his safety. (Cits.)" [Cit.]

*Heard v. State*, 204 Ga. App. 757, 759 (2) (420 SE2d 639) (1992). Testimony that the victims ran from the gunfire is sufficient evidence that Appellants placed them in reasonable apprehension of immediately receiving a violent injury. See *Adkins v. State*, 279 Ga. 424, 425-426 (2) (614 SE2d 67) (2005); *Roberts v. State*, 267 Ga. 669, 671 (1) (482 SE2d 245) (1997); *Lewis v. State*, supra; *Heard v. State*, supra. Sanders testified that he was sitting on the ground, could have been shot, and would have been if he had stood up. A jury could find that Sanders experienced a reasonable apprehension of receiving a violent injury even though he affirmatively testified that he was not afraid. *Lunsford v. State*, 260 Ga. App. 818, 821 (2) (581 SE2d 638) (2003). " '(R)easonable apprehension of injury is not the same as simple fear,' and the fact that the victim does not necessarily experience fear does not preclude a finding of reasonable apprehension. [Cits.]" *Bates v. State*, 275 Ga. 862, 865 (4) (572 SE2d 550) (2002). Thus, the evidence was sufficient to prove the three counts of aggravated assault of which Howard complains. See *In the Interest of C. D. G.*, 279 Ga. App. 718, 719 (632 SE2d 450) (2006). Moreover,

other evidence showed that all of the victims were positioned in or very near the line of fire. "[D]eliberately firing a gun in the direction of another person constitutes aggravated assault[.]" *Baker v. State*, 273 Ga. App. 297, 299 (1), fn. 8 (614 SE2d 904) (2005) (citing *Williams v. State*, 249 Ga. 6, 8 (4) (287 SE2d 31) (1982)). See also *Willis v. State*, 214 Ga. App. 479-480 (1) (448 SE2d 223) (1994). Compare *Merrell v. State*, 162 Ga. App. 886, 887 (2) (293 SE2d 474) (1982).

Reviewing the evidence in the light most favorable to the verdicts, we conclude that it was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that each Appellant was guilty of all of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Howard contends that the trial court committed reversible error by failing to inform the jury of the definition of simple assault even though that offense is an essential element of aggravated assault.

As the trial court found, no objections to the jury instructions relevant to this assertion of error were raised at trial. Because Howard "was tried after the effective date of the 2007 amendment to OCGA § 17-8-58 and 'did not specifically object to (this) charge . . . at the conclusion of the jury charge, he has waived his right to urge error on appeal.' [Cit.]" *Madrigal v. State*, 287 Ga. 121, 122-123 (3) (694 SE2d 652) (2010).

Moreover, we find no reversible error, much less any "plain error" pursuant to OCGA § 17-8-58 (b), assuming that analysis under that provision is proper in this case. "Pretermitting whether a charge on the elements of aggravated assault should include the statutory definition of simple assault, we find no harm. [Cits.]" *Giddens v. State*, 276 Ga. App. 353, 356 (2) (623 SE2d 204) (2005). Although the Court of Appeals held in *Coney v. State*, 290 Ga. App. 364, 368-369 (1) (659 SE2d 768) (2008) that it was "harmful error for a trial court to fail to charge the statutory definition of assault in a case where the jury could find a defendant guilty of aggravated assault based merely on criminal negligence rather than intent, [cit.] this is not such a case." *Emmanuel v. State*, 300 Ga. App. 378, 380 (3) (685 SE2d 361) (2009). Howard's defense was mistaken identity, and the undisputed evidence shows that the perpetrators intentionally fired their guns, through the parking lot occupied by many pedestrians, in the direction of the vehicle carrying White and his friends. Neither negligence nor reckless conduct was an issue in this case and, thus, any error in the charge would not have affected the outcome of the case. *Emmanuel v. State*, supra. At this time, therefore, we do not need to address this Court's prior holding that "[t]here is no merit in [the] contention that a charge on simple

assault ([cit.]) must be given in order to complete the definition of aggravated assault ([cit.]). The latter does not need the former to make it complete. [Cit.]" *Sutton v. State*, 245 Ga. 192, 193 (2) (264 SE2d 184) (1980). See also *White v. State*, 267 Ga. 523, 524 (5) (481 SE2d 804) (1997); *Cantera v. State*, 304 Ga. App. 289, 293 (3) (696 SE2d 354) (2010) (cert. granted).

3. Both Appellants complain that the following language in the trial court's charge and recharge authorized the jury to find one defendant guilty of murder if it found that the other defendant committed felony murder:

> If you find and believe beyond a reasonable doubt that one or both of the defendants committed the homicide alleged in this bill of indictment at the time either or both of the defendants were engaged in the commission of the felony of aggravated assault, then you would be authorized to find either or both of the defendants guilty of murder, whether the homicide was intended or not.

Neither Appellant specifically objected to this instruction before the jury retired to deliberate, nor did either Appellant object to the recharge on any ground set forth in this appeal. See OCGA § 17-8-58; *Madrigal v. State*, supra.

Moreover, there is no reversible error, much less any "plain error," assuming that examination of the jury charge and recharge for plain error is proper here. The trial court further instructed the jury that "conviction of one defendant does not necessarily require conviction of the other. You, the jury, must determine the guilt or innocence of each defendant separately." The jury was also charged as follows:

> If you do not believe that either or both of the defendants are guilty of one or more of these offenses or if you have any reasonable doubt as to either or both of the defendants' guilt, then it would be your duty to acquit either or both of the defendants.

"[V]iewing the jury instructions as a whole, [cit.], there is no reversible error." *Hightower v. State*, 287 Ga. 586, 590 (4) (698 SE2d 312) (2010). See also *Delacruz v. State*, 280 Ga. 392, 398 (5) (627 SE2d 579) (2006).

Contrary to Ross' further contention, the trial court did not commit reversible error in its recharge by failing to instruct the jury that a verdict for one defendant does not demand the same verdict for the co-defendant, or that the charge must be considered as a

whole and that the initial charge and the recharge must be given equal weight. " ' "[W]here the jury requests further instructions upon a particular phase of the case, the court in (its) discretion may recharge them in full, or only upon the point or points requested." (Cits.)' [Cit.]" *Davis v. State*, 287 Ga. 173, 175 (3) (695 SE2d 251) (2010). Furthermore, the jury had been given the instructions in writing and, in its recharge, the trial court stated that it would highlight some of those charges. Ross has failed to show any indication that the jury was confused or left with an erroneous impression of the law. See *Drane v. State*, 265 Ga. 255, 258 (4), fn. 4 (455 SE2d 27) (1995); *Davis v. State*, 278 Ga. App. 628, 631 (2) (629 SE2d 537) (2006); *Arsenault v. State*, 257 Ga. App. 456, 458 (3) (571 SE2d 456) (2002). "If anything, both the recharge and the presence of the written instructions in the jury room would have served to enlighten, rather than confuse, the jury." *Smith v. State*, 251 Ga. App. 452, 454 (2) (554 SE2d 596) (2001).

4. Ross contends that, because the threat against Howard with a gun constituted at least slight evidence of provocation, the trial court erred in failing to give his requested charge on voluntary manslaughter.

> "It is a question of law whether there is any evidence to support a finding that the defendant acted 'solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . .' OCGA § 16-5-2 (a). (Cit.)" [Cit.]

*Foster v. State*, 288 Ga. 98, 105 (4) (701 SE2d 189) (2010). We assume, for purposes of this appeal only, that the provocation involved may come from a person different from the homicide victim. See *Foster v. State*, 288 Ga. at 105, supra; *Foster v. State*, 264 Ga. 369 (1), fn. 2 (444 SE2d 296) (1994).

"Just as a reasonable man may be provoked by some sorts of conduct which inflict injury upon himself, so too he may be provoked by the same sorts of conduct which causes injury to his close relatives. [Cits.]" 2 Wayne R. LaFave, *Subst. Crim. L.* § 15.2 (b) (7) (2d ed.). However, "words alone cannot constitute the serious provocation which will serve to reduce a killing from murder to manslaughter ([cit.])." *Riggins v. State*, 279 Ga. 407, 408 (2) (614 SE2d 70) (2005). See also *Todd v. State*, 274 Ga. 98, 102 (4) (549 SE2d 116) (2001). In the cases now before us, although more than mere words were used against Howard, Ross was not present during the alleged provocation of his stepson by White. Instead, the evidence shows, at most, that the incident was subsequently communicated to Ross, who picked Howard up about 45 minutes after being called and

obviously knew that he was uninjured, and that the shooting occurred three to four hours after the initial confrontation. "Thus, objectively, [Ross'] response to the provoking incident was unreasonable." *State v. Copling*, 741 A2d 624, 631-632 (III) (N.J. Super. 1999). Under these facts and circumstances, we hold as a matter of law that the threat against Howard allegedly committed by White with a gun does not rise to the level of a serious provocation of Ross "sufficient to excite sudden, violent and irresistible passion in a reasonable person that would require a charge on voluntary manslaughter." *Gillespie v. State*, 236 Ga. 845, 847 (225 SE2d 296) (1976). Compare *Washington v. State*, 249 Ga. 728, 730-731 (3) (292 SE2d 836) (1982).

5. Ross further contends that the trial court erred in ruling prior to jury selection that any attorney who violated *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) would be held in contempt and charged with the cost of reseating the jury. However, Ross did not question the trial court's announcement of the remedies for an "improper peremptory strike until his motion for new trial. Any assertion of a *Batson* issue must be raised before the jurors are sworn . . . . [Cits.]" *Holmes v. State*, 273 Ga. 644, 645 (2) (543 SE2d 688) (2001). Ross' attorney did not insist at trial on the right which he now asserts to make peremptory strikes without being inhibited from zealous advocacy by the threat of contempt and financial penalty. "[I]nstead, [s]he remained silent. Thus, defense counsel acquiesced in the court's ruling and waived this issue on appeal. [Cits.]" *Agee v. State*, 279 Ga. 774, 775 (2) (621 SE2d 434) (2005). "[A] party cannot ignore during trial [an announced procedure] which he or she thinks to be error, take a chance on a favorable outcome, and complain later. [Cits.]" *Facey v. Facey*, 281 Ga. 367, 368-369 (1) (638 SE2d 273) (2006).

6. Ross urges that the trial court erred by instructing the jury that it could consider the intelligence of the witnesses to decide their credibility. However, Ross did not specifically object to the instruction before the jury retired to deliberate. See OCGA § 17-8-58; *Madrigal v. State*, supra. Moreover, we find no reversible error, much less any "plain error" pursuant to OCGA § 17-8-58 (b), assuming that analysis thereunder is proper in this case.

> The court's charge shows that the intelligence factor was not highlighted or singled out; it was one of several factors which could be considered. The charge given was identical to the pattern charge prepared by the Council of Superior Court Judges and very similar to the charge [previously] approved by this court . . . .

*Ward v. State*, 239 Ga. 205, 206 (3) (236 SE2d 365) (1977). See also

*Phelps v. State,* 245 Ga. 338, 340 (5) (265 SE2d 53) (1980); 89 CJS *Trial* § 507. After the present cases were tried, the Court of Appeals held that the charge on credibility should not include intelligence as a factor, as that portion of the charge is problematic and confusing. *McKenzie v. State,* 293 Ga. App. 350, 352 (2) (667 SE2d 142) (2008). However, the Court of Appeals also stated that, "insofar as generally concerns a witness's means and opportunity for knowing facts, a juror could reasonably find a more intelligent witness to be more credible than a less intelligent one[,]" and that the charge is not "so harmful as to require a reversal." *McKenzie v. State,* supra. See also *Walker v. State,* 305 Ga. App. 607, 616 (7) (699 SE2d 902) (2010). Therefore, even assuming that the better practice is to omit intelligence as one of the factors in the credibility charge, its inclusion is not reversible error. *Ward v. State,* supra; *McKenzie v. State,* supra. Furthermore, because no reversible error occurred with respect to the jury instruction on credibility, Ross cannot succeed on his alternative claim that trial counsel rendered ineffective assistance in failing to object to that instruction. *Jennings v. State,* 288 Ga. 120, 123 (6) (a)-(b) (702 SE2d 151) (2010); *Butts v. State,* 273 Ga. 760, 771 (30) (546 SE2d 472) (2001).

*Judgments affirmed. All the Justices concur, except Nahmias, J., who specially concurs.*

NAHMIAS, Justice, specially concurring.

For the reasons given in my special concurrence in *Collier v. State,* 288 Ga. 756 (707 SE2d 102) (2011), also issued today, I believe that OCGA § 17-8-58 (b) mandates that appellate courts apply plain error review to enumerated errors regarding jury charges that were not objected to at trial as required by OCGA § 17-8-58 (a). I therefore do not agree that we should merely "assum[e]" that plain error review is appropriate, as the majority opinion does in Divisions 2, 3, and 6, see Maj. Op. at pages 743, 744, 746, thereby leaving the conflict in our case law on this issue unresolved. Accordingly, I do not join those portions of the majority opinion, although I join the remainder of the opinion and concur in the result.

DECIDED MARCH 7, 2011.

*Kenneth D. Kondritzer, Alixe E. Steinmetz,* for appellant (case no. S10A2028).

*Dwight L. Thomas,* for appellant (case no. S11A0026).

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Paige R. Whitaker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney Gen-*

*eral, Christopher R. Johnson, Assistant Attorney General*, for appellee.